UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JIMMY LEE VERNON JR. | CIVIL ACTION |
| VERSUS | NO. 23-6882 |
| EARNESTINE LARK | SECTION "G" (2) |

**REPORT AND RECOMMENDATION**

Plaintiff Jimmy Lee Vernon, Jr., filed a complaint pursuant to 42 U.S.C. § 1983 which was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and(2). Upon review of the record, the court has determined that this matter can be disposed of without an evidentiary hearing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Vernon is an inmate housed in the Folsom State Prison in Folsom, California. ECF No. 4, ¶II at 2; *id*., ¶III(A), at 3. He filed this *pro se* and *in forma pauperis* § 1983 complaint against defendant Earnestine Lark, whom he identifies as his father's sister and a resident of the State of California. *Id*., ¶IV, at 4. Vernon claims that he is the only child of his father Jimmy Lee Vernon, Sr., who died on September 10, 2020, in Arcadia, Louisiana. He contends that, about one month before his father died, defendant Lark came to Louisiana and had Vernon Sr. make a donation of his land to her through fraud. Vernon claims that he contacted the Bienville Parish court about the transfer, and on October 18, 2021, he received a response from the court advising him to get a lawyer. *Id*. at 5.

Vernon claims that he contacted a lawyer in Arcadia who told Vernon on February 4, 2021, that he could assist him with his father's succession. On March 29, 2021, the attorney sent Vernon information about several tracts of land his father acquired. Vernon alleges that, on September 28, 2021, the attorney advised Vernon that he was retiring and could not finish the succession. Vernon claims that he recalled from a visit he made to Louisiana in 1997, that the lawyer's family and the Vernon's were connected. Vernon alleges that when he mentioned this, the lawyer told Vernon that he could not sue because they did not have a contract.

Vernon further claims that he was in contact with his father until July of 2020 when Lark "hid" Vernon Sr. from him. *Id*. Vernon alleges that his father never told him that he was leaving everything to Lark, who waited until Vernon Sr. was not competent or mentally stable to take everything he had. *Id*. at 5-6. Vernon alleges that Lark hired a lawyer in Arcadia to help her commit fraud against his father's estate. *Id*. at 6.

He further alleges that his father also had land in California. On April 11, 2023, he received a letter from a lawyer notifying him as the next of kin that the land in California also went to Lark. He later learned that, on September 10, 2020, Lark had a will printed out and had the succession opened in Bienville Parish on February 13, 2023, without notifying him. He contacted the Bienville Parish court and the clerk of court responded on October 2, 2023, telling him again to contact a lawyer.

As relief, he requests that the court correct the wrong being done by Lark and stop the Bienville Parish court from allowing her to commit fraud and take his father's estate. *Id*., ¶V, at 7. He would like Lark and anyone who assisted her to be held accountable and his rights to his father's property returned to him. He also asks for punitive damages in the amount of $500,000.00 for pain and suffering.

## II. Venue for § 1983 Actions

Vernon filed his complaint on the form reserved for prisoner civil rights suit brought under 42 U.S.C. § 1983. Because § 1983 contains no specific venue provision, venue is determined under the general venue provisions of 28 U.S.C. § 1391.[1] The general venue statute at 28 U.S.C. § 1391(b) provides as follows:

> A civil action may be brought in -- (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Pursuant to 28 U.S.C. § 1406(a), a district court in which a case was filed in the wrong district "shall" dismiss the action. Nevertheless, the provisions of both 28 U.S.C. § 1404 and § 1406 allow a court to transfer, rather than dismiss, a case from a district in which venue is wrong to another district or division in which venue is proper, when transfer is in the interest of justice.[2] The transfer provisions "'should be regarded as a federal judicial housekeeping measure, dealing with the placement of litigation in the federal courts and generally intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms.'"[3] Some of the interests of justice to be weighed by a transferring court include "the cost and ease of litigation," "the interest in having a case involving local disputes and local law resolved by a local court," and the facilitation of judicial economy and avoidance of duplicitous litigation.[4] A court's transfer inquiry requires an "individualized, case-by-case consideration of convenience and fairness."[5]

---

[1] *See Jones v. Bales*, 58 F.R.D. 453 (N.D. Ga. 1972), *aff'd*, 480 F.2d 805 (5th Cir. 1973).
[2] *See Balawajder v. Scott*, 160 F.3d 1066 (5th Cir. 1998).
[3] *In re Rolls Royce Corp.*, 775 F.3d 671, 677 (5th Cir. 2014).
[4] Id. at 677-78 (citing Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. W.D. Tex., 571 U.S. 49, 62 n.6 (2013)).
[5] *Id*. at 678.

## III. DISCUSSION

### A. Improper Venue

Vernon has presented no basis for his § 1983 complaint to proceed in the Eastern District of Louisiana. Under § 1391, venue would be proper where the defendant resides or may be found and where the substantial part of the events occurred. Vernon indicates that the only named defendant, Earnestine Lark, is a citizen of Los Angeles, California, in Los Angeles County, California, which falls within the geographical boundaries of the Western Division of the United States District Court for the Central District of California.[6] Vernon further claims that the property at issue and Lark's actions about which he complains occurred in the town of Arcadia, Louisiana, in Bienville Parish, Louisiana, which is within the geographical boundaries of the United States District Court for the Western District of Louisiana.[7] Considering the possible proper venues available under § 1391, the Eastern District of Louisiana is not one.

Therefore, Vernon's complaint should be dismissed pursuant to § 1406(a) because his filing lays venue in a wrong district, unless the interests of justice dictate that the matter be transferred. Considering Vernon's claims against Lark, transfer is not appropriate.

### B. Transfer Not Warranted in this Case

While transfer may be considered by the court, the interests of justice and fairness to the parties does not dictate transfer of this case for the following reasons. Initially, § 1983 does not provide Vernon relief from the loss of his inheritance or property right in his father's estate. Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

---

[6] 28 U.S.C. § 84(c)(2).

[7] 28 U.S.C. § 98(c).

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[8]

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and to provide relief to victims if such deterrence fails."[9]

A plaintiff must satisfy three elements to establish § 1983 liability:

(1) deprivation of a right secured by the U.S. Constitution or federal law;
(2) that occurred under color of state law; and
(3) was caused by a state actor.[10]

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[11] This requires the plaintiff to identify both the constitutional violation and the responsible person acting under color of state law.[12] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[13]

In this case, Vernon has not alleged the denial of a constitutional right by a state actor. The only named defendant, Earnestine Lark, is not alleged to be a state actor. Instead, she is identified as Vernon's Aunt, a private person whom Vernon alleges acted of her own volition to induce his father to rewrite his will and transfer property to her in derogation of Vernon's inheritance rights. Actions by private citizens do not constitute state action for purposes of § 1983.[14]

---

[8] 42 U.S.C. § 1983.
[9] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)).
[10] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).
[11] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).
[12] *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).
[13] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *accord Thibodeaux v. Bordelon*, 740 F.2d 329, 333 (5th Cir. 1984).
[14] *Briscoe v. LaHue*, 460 U.S. 325, 329 (1983).

Second, none of Vernon's claims involve the violation of a right protected by the United States Constitution or the Due Process Clause to be redressed under § 1983. Vernon has not explained how any of the alleged conduct by Lark, or the lawyers who allegedly assisted her, deprived him of "rights, privileges, or immunities secured by the Constitution or laws of the United States."[15] In addition, the broad scope of the Due Process Clause of the Fourteenth Amendment *only* "prohibits the *states* from denying federal constitutional rights" and its protections *only* extend "to acts of the *states*, *not* to acts of private persons or entities."[16] The Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful."[17] Thus, the fact that Lark, and the lawyers who assisted her, may have used the state courts to accomplish her deeds does not create a state action for purposes of § 1983.[18] In sum, "[w]here there is no state action, no section 1983 constitutional claim exists."[19]

The court recognizes that Vernon alleges that the state clerk of court in Bienville Parish, who is not a named defendant, should not have allowed Lark to use the court to take his father's property or open the estate without notice to Vernon. However, the Due Process Clause does not require the State or its officers to protect property rights of its citizens against invasion by private

[15] *Alexander v. Reese*, 702 F. App'x 223, 228 (5th Cir. 2017) (finding plaintiff as an heir failed to state a violation of a constitutional right arising from his relatives' and other defendants' questionable actions in connection with his aunt's estate) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

[16] (emphasis added) *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982).

[17] *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948).

[18] *Johnson ex rel. Wilson v. Dowd*, 305 F. App'x 221, 2008 WL 5212795, at *3 (5th Cir. 2008) ("It is well-established that no 'state action' is involved when the state merely opens its tribunals to private litigants." (internal quotation omitted)).

[19] *Yeager v. City of McGregor*, 980 F.2d 337, 338 (5th Cir. 1993); *see Williamson ex rel. J.S.W. v. Presbyterian Christian Sch., Inc.*, No. 18-CV-15, 2018 WL 10419234, at *3 (S.D. Miss. Oct. 2, 2018) (court lacked subject matter jurisdiction where plaintiff failed to allege colorable Fourteenth Amendment claim against private party defendants by failing to allege they were state actors).

actors.[20] Furthermore, litigants "may not obtain review of state court actions by filing complaints about those actions in lower federal courts cast in the form of civil rights suits."[21]

Instead, even assuming there could be some state action involved in the alleged deprivation of Vernon's property rights, the appropriate avenue to seek any post-deprivation relief for the loss of his property or rights thereto falls under state law remedies available through the state courts, and not the Due Process Clause.[22] The Supreme Court has long recognized that, whether the result of negligence or intentional acts, deprivations of property by state actors does not violate the Due Process Clause when adequate state post-deprivation remedies are available.[23] Louisiana provides several avenues under its inheritance and general property laws for Vernon to have made a claim to his father's estate and challenge the alleged improper actions by Lark.[24]

For these reasons, Vernon's § 1983 complaint is frivolous and fails to state a viable § 1983 claim.[25] Therefore, having urged no plausible federal claim against the only named defendant, the

---

[20] *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)); *accord Howard v. Dixie Dunavant Ins. Agency*, 227 F. App'x 363, 365 (5th Cir. 2007) ("The Supreme Court has held that 'merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge.'") (quoting *Dennis v. Sparks*, 449 U.S. 24, 28 (1980)).

[21] *Long v. Wright*, 103 F. App'x 800, 2004 WL 1386305, at *1 (5th Cir. 2004) (internal quotation omitted).

[22] *See Leggett v. Williams*, 277 F. App'x 498, 500 (5th Cir. 2008) (a state-law post-deprivation remedy is considered meaningful and adequate even if the plaintiff might not be able to recover the full amount of his loss) (citing *Hudson v. Palmer*, 468 U.S. 517, 535 (1984)).

[23] *Hudson*, 468 U.S. at 533.

[24] *See*, *e.g.*, LA. CODE CIV. PROC. art. 2931 which provides a cause of action for annulment of a probated testament; LA. CODE CIV. PROC. art 3651 which allows a petitory action to be brought by a person claiming the ownership of immovable property against another in possession or claiming adverse ownership.

[25] As soon as practicable after docketing, the court must review a prisoner's § 1983 complaint for a cognizable claim, or dismiss the complaint if it is frivolous and/or fails to state a claim. 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *Martin v. Scott*, 156 F.3d 578, 579-80 (5th Cir. 1998). The court must dismiss an *in forma pauperis* or prisoner-filed § 1983 complaint if, upon review, it is frivolous and/or fails to state a claim. *See*, *e.g.*, 28 U.S.C. § 1915(e)(2)(B); *Martin*, 156 F.3d at 579-80. A claim is frivolous if it "lacks an arguable basis in law or fact." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994). The law "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Macias v. Raul A.*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

interests of justice do not require that this civil action be transferred to a court of proper venue.[26] The complaint should be dismissed pursuant to § 1406(a).

## IV. RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff Jimmie Lee Vernon Jr.'s 42 U.S.C. § 1983 complaint against defendant Earnestine Lark be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1406(a) for laying venue in a wrong district.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[27]

New Orleans, Louisiana, this 3rd day of April, 2024.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[26] Vernon has urged no other basis for federal jurisdiction. Both he and the defendant are alleged to be residing in California, which would prevent consideration under the court's diversity jurisdiction. Furthermore, "federal courts may not hear probate matters as part of their diversity jurisdiction." *Ventry v. Ventry*, No. 10-1972, 2010 WL 3488251, at *2 (E.D. La. Jul. 29, 2010) (quoting E. Chemerinsky, *Federal Jurisdiction* § 5.3 at 288 (Little, Brown 2d ed. 1994) (other citations omitted), *R&R adopted by* 2010 WL 3488247, at *1 (E.D. La. Aug. 27, 2010).

[27] *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996). *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.